# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| GEORGE KEETON, | ) |
| | ) CASE NO. 1:05-CV-0033 |
| Petitioner, | ) |
| | ) JUDGE ECONOMUS |
| v. | ) |
| | ) MAGISTRATE JUDGE VECCHIARELLI |
| MARGARET BRADSHAW, Warden, | ) |
| | ) **REPORT & RECOMMENDATION** |
| Respondent. | ) |

Petitioner, George Keeton, ("Keeton"), challenges the constitutionality of his conviction in the case of *State v. Keeton*, Case No. 03CR12D.  Keeton, through counsel, filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on January 7, 2005 with the United States District Court for the Northern District of Ohio.  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, the Magistrate Judge recommends Keeton's petition (Doc. No. 1) be GRANTED IN PART, solely with respect to Ground Two, and the petition be DENIED IN PART on the remaining grounds.   The Magistrate recommends that the case be remanded for resentencing consistent with *Blakey v. Washington*, 542 U.S. 296 (2004) and *State v. Foster*, 109 Ohio St. 3d 1 (2006).

# I. Summary of Facts

The Ohio Court of Appeals set forth the following facts underlying Keeton's conviction:[1]

> On August 19, 2002, the victims in this case, Ashley Gaines and Anna Adkins, met Richard Myers at a Speedway gas station. Myers asked the girls if they would like to go to a party with him. Gaines, Adkins and Myers went to appellant's home. Thereafter, the entire group went to Bell Street. Gaines and Adkins drove their vehicle to the Bell Street address. After leaving the Bell Street address, Gaines, Adkins, Myers and appellant made several other stops and eventually went to Fantasyland.

> At Fantasyland, appellant paid for everyone's admission. After spending some time at Fantasyland, the group left and returned to the Speedway gas station. At that point, Gaines, Adkins, Myers, Jason Flannery and appellant exited the van they had been traveling in and entered Myers' vehicle. While at the Speedway gas station, appellant accused Gaines and Adkins of stealing money from him. Gaines and Adkins exited the vehicle for a short while and subsequently re-entered Myers' vehicle in order to go for a ride.

> While driving around in Myers' vehicle, appellant again brought up the subject of stolen money. Both Gaines and Adkins denied taking the money.

(Doc. No. 9.)

Both victims testified that Keeton, who was sitting in the front passenger seat of the vehicle, threatened to kill them and throw them in a lake or a ditch. (Tr. 148, 253.)

> At some point, Gaines became sick and they had to stop the vehicle in order for her to vomit. Upon re-entering the vehicle, appellant again mentioned the stolen money . . . .

(Doc. No. 9.)

---

[1]Factual determinations by state courts are entitled to a presumption of correctness. *House v. Bell,* 283 F.3d 37 (6th Cir. 2002).

2

Keeton, who is 6'4" and over 200 pounds,  started screaming and, again, threatened to kill the victims.  (Tr. 152-53, 258, 922-23.)   Keeton admits to making the victims take off their clothes.  (Tr. 911.)  He told one victim to take off her clothes and she complied.  (Tr. 153, 258.)  Keeton then threw her clothes out the window.  (Tr. 153, 911.)  He then ordered the other victim to take off her clothes.  When she refused, Flannery grabbed her by the hair, pulled her around, and told her take off her clothes.  (Tr. 153.)  She complied and her clothes were thrown out the window also.  (Tr. 153, 911.)

Thereafter, Keeton started repeatedly punching the victims in the face, resulting in multiple injuries for both.  (Tr. 154-55, 167-68, 261-63.)  Keeton admits to punching both of the victims.  (Tr. 910.)  One victim had facial bruising, a swollen lip, a bloody nose, and chipped teeth.  (Tr. 154, 167-68.)  The other victim had facial bruising and bleeding and a fractured nose.  (Tr. 282.)  Myers continued driving through these events.  (Tr. 155-56.)  Flannery, upon Keeton's order, repeatedly hit the victims, following Keeton's lead.  (Tr. 155-56, 263.)

One victim begged to be driven home so that she could get money for Keeton.  (Tr. 156.)  Both victims were crying and screaming.  (Tr. 156-57, 264.)  According to the victim, Keeton threatened to kill them.  (Tr. 160.)

Keeton then forced one victim to perform oral sex upon the other by pushing her head down between the other victim's legs. (Tr. 260.)  When the victim tried to lift her head, Keeton pushed it back down.  (Tr. 158, 261.)   Keeton and Flannery then began penetrating the victim's vaginas with their fingers.  (Tr. 158.)

At a stop sign, one of the victims attempted to escape the vehicle.  (Tr. 159-60.)  She testified that Keeton told Myers to "go" and Myers sped up the vehicle, which caused the door to

3

shut on her.  (*Id*.)  Myers then locked the doors, so that the back passengers could not unlock the doors.  (*Id*.)

About five or ten minutes later, Keeton ordered the driver to stop the vehicle.  (Tr. 161.) Keeton stated, "let this bitch out and hold this bitch [referring to the other victim] by the hair of her head."  (*Id*.)  One victim was released on the side of a road naked. (Tr. 161-62.)  Flannery obeyed Keeton's order and grabbed the other victim by the hair, making her unable to leave the vehicle.  (Tr. 161, 265-66.)

The victim remaining in the vehicle was further sexually assaulted by Keeton and his co-defendants.  Keeton made her lean over the front seat, so that he and Flannery could penetrate her vaginally with their hands.  (Tr. 266.)  Keeton then tried to force the victim to perform oral sex on him.  (Tr. 266.)  The victim tried to resist, but Keeton was able to penetrate her mouth with his penis.  (Tr. 267.)  Keeton then ordered the victim to "give it to my home boys, too, you're going to do it."  (Tr. 267-68.)  Thereafter, Keeton forced the victim's head down toward the Myers' exposed penis.  (Tr. 268.)  Myers then penetrated the victim's mouth with his penis. (*Id*.)  Keeton then threw the victim in the backseat, so that Flannery could penetrate the victim's mouth with his penis, as well.   (Tr. 269.)

Eventually, Keeton made the decision to let the victim go.  (Tr. 271.)  Flannery kicked her out the vehicle naked, such that she landed on her hands and knees on the side of the road. (*Id*.)

The victims were released about 45 minutes apart in separate locations.  The victims showed up naked and hysterical on the doorstep of separate residences and reported similar stories about the events of that night to the homeowners, police officers, and healthcare workers.

4

Moreover, at trial, the examining nurses, Deborah Nashburn and Joanne Smalley, testified that their medical findings were consistent with the victims' statements to them about the events of that night.  (Tr. 433, 445.)  Nurse Nashburn also related to the jury one of the victim's versions of the events of the night.  (Tr. 404-08.)

Detective Matthew Mayer testified that the victims' statements given to him in the days following their rapes and kidnappings were consistent with the testimony they gave at trial.  (Tr. 756, 768, 769.)  Det. Mayer also testified that one of the victims stated to him that Keeton "was the primary aggressor and actually assaulted, raped, forced them to take off their clothes and beat them and . . . had them thrown out . . . ."  (Tr. 758.)

Dr.  Marion Demers, the primary physician of one of the victims, testified that she wrote in a report that the victim was raped and beaten by two men and that she wrote that statement because the victim stated that there was a driver and then two men who were doing the majority of the attacking.  (Tr. 722-23.)

After the victims were released, Keeton, Myers, and Flannery drove back to Bell Street, arriving at approximately 4:00 a.m.  At this point, they stopped in the house where the party was held earlier that night, but left shortly thereafter.  They then went to the victim's car, which had been parked in front of the house, broke the window, and then pushed it down the street.  (Tr. 620-22, 705.)

Later, Myers and Flannery were stopped by police and arrested around 4:30 a.m.  (Tr. 459-62.)  Keeton was not in the vehicle at that time.  At trial, Det. Mayer testified as to the time and distance it took him to travel from the house where the last victim was released to Bell Street and to the place of Myers and Flannery's arrest.  (Tr. 776-82.)  The evidence demonstrated that

Keeton and his co-defendants had sufficient time to drive to the various locations and to move the victims' vehicle before the arrest of Myers and Flannery  (*Id.*)

A few days after the arrest of Myers and Flannery, police were given an anonymous tip regarding Keeton's whereabouts.  (Tr. 545-46.)   Police arrived at a motel in Indiana where Keeton was believed to be staying. (Tr. 547.)  One of the arresting officers, Detective Bob Mack, testified that:  he believed Keeton to be a flight risk; officers were stationed around Keeton's motel room; police ordered nearby rooms to be evacuated; and Keeton was placed in a "felony position" on his knees when he was arrested.  (Tr. 545-57.)   Police discovered that the motel room where Keeton was staying was registered in another person's name, specifically Christopher Chinn's name.  (Tr. 549.)  Chinn testified that Keeton asked Chinn to get him a hotel room because Keeton lacked identification and that Chinn rented the room using his own fake identification.  (Tr. 560.)

After Keeton was brought into custody, he was placed at the Richland County jail. While incarcerated there, he approached Tommy Thiesen, a prison guard at the facility and asked him if he wanted to make $50.  (Tr. 679.)  Keeton explained to Thiesen that the $50 would be for letting him go to church to meet Myers.  (Tr.  680.)  Thiesen explained that Keeton was not permitted to meet Myers who, at that time, also was incarcerated at the same jail.  Thiesen explained the two of them were required to be separated so that they could not collaborate stories.  (Tr. 680-81.)

## II.  Procedural History

### A.        Conviction

The Richland County Grand Jury returned a ten-count indictment charging Keeton with:

one count of kidnapping in violation of Ohio Revised Code ("O.R.C.") § 2905.01(A)(4); one count of aiding or abetting kidnapping in violation of O.R.C. § 2905.01(A)(4); two counts of rape in violation of O.R.C. § 2907.02(A)(2); two counts of aiding or abetting rape in violation of O.R.C. § 2907.02(A)(2); one count of tampering with evidence in violation of O.R.C. § 2921.12(A)(1); one count of bribery in violation of O.R.C. § 2921.02(A); one count of felonious assault in violation of O.R.C. § 2903.11(A)(1); and one count of aiding or abetting felonious assault in violation of  O.R.C. § 2903.11(A)(1).  (Doc. No. 7, Exh. 2.)  A jury found Keeton guilty on all counts.  (Doc. No. 7, Exh. 3.)

The trial court sentenced Keeton to: consecutive terms of six years on the kidnapping count, nine years on the aiding or abetting kidnapping count, eight years on each rape count, and nine years on one of the aiding or abetting rape counts; and concurrent terms of eight years on the other aiding or abetting rape count, two years each on the tampering with evidence and bribery counts, and five years each on the felonious assault and aiding or abetting felonious assault counts.  (Doc. No. 7, Exh. 4.)

**B.      Direct Appeal**

Keeton, through counsel, appealed the trial court's judgment and sentence to the Ohio Court of Appeals.  (Doc. No. 7, Exhs. 5, 6.)  The Court of Appeals affirmed the trial court's judgment.  (Doc. No. 7, Exhs. 1, 9.)  Keeton, through counsel, filed an Application for Reconsideration in the Court of Appeals.  (Doc. No. 7, Exh. 10.)  The Court of Appeals denied Keeton's application.  (Doc. No. 7, Exh. 12.)

Keeton, through counsel, appealed to the Ohio Supreme Court.  (Doc. No. 7, Exhs. 13, 14.)  The Ohio Supreme Court denied Keeton leave to appeal and dismissed the appeal as not

7

involving any substantial constitutional question.  (Doc. No. 7, Exh. 16.)

**C.      Federal Habeas Petition**

On January 7, 2005, Keeton, through his same counsel on direct appeal, filed a Petition

for Writ of Habeas Corpus, asserting the following ten grounds for relief:

> GROUND ONE:  Sixth and Fourteenth Amendments.
>
> Supporting facts: Petitioner was denied his constitutional right of confrontation and cross-examination when the court admitted into evidence a letter written by another person who did not testify and was not subject to confrontation and cross-examination in violation of the pronouncement in *Crawford v. Washington*, 124 S.Ct. 1354 (2004).
>
> GROUND TWO:  Sixth and Fourteenth Amendments.
>
> Supporting Facts: Petitioner was sentenced to consecutive terms of imprisonment amounting to forty (40) years. The sentence was based on findings made by the court which were not alleged in the indictment nor found by the jury in its verdict in violation of the pronouncement in *Blakely v. Washington*, 124 S.Ct. 2531 (2004).
>
> GROUND THREE:  Sixth Amendment.
>
> Supporting Facts: Petitioner was denied a fair and impartial jury when jurors were excused for cause by the court without granting an opportunity by the defense to inquire the jury as to [sic] concerning their fairness or ability to serve.
>
> GROUND FOUR:  Fourteenth Amendment.
>
> Supporting Facts: Petitioner was convicted of an offense that was not shown to have been committed in the county of trial. Petitioner was tried in Richland County. However the events claimed to constitute the offense occurred in Ashland County.
>
> GROUND FIVE:  Fourteenth Amendment.
>
> Supporting Facts: Petitioner was denied a fair trial when the prosecutor engaged in improper prosecutorial argument.

8

GROUND SIX:  Fourteenth Amendment.

Supporting Facts: Petitioner was denied due process of law when he was allowed to be convicted as an aider and abettor without requiring the state to prove a culpable mental state.

GROUND SEVEN:  Sixth Amendment.

Supporting Facts: Petitioner was denied effective assistance of trial counsel where counsel committed errors and omitted to provide representation.

GROUND EIGHT:  First and Fourteenth Amendments.
Supporting Facts: Petitioner was convicted of the offense of tampering with evidence when there was no evidence presented to support a conviction. In addition, petitioner was convicted of bribery where his only conduct was the exercise of free speech.

GROUND NINE:  Fourteenth Amendment.

Supporting Facts: Petitioner's conviction for kidnapping and rape were not supported by any evidence. There was insufficient evidence to permit a rational factfinder to return a verdict of guilty for these offenses.

GROUND TEN:  Fifth and Fourteenth Amendments.

Supporting Facts: Petitioner was subjected to unconstitutional multiple punishments when he was separately sentenced for the offenses of rape and kidnaping.

(Doc. No. 1.)

### III.  Procedural Default

Procedural default occurs when the petitioner fails to present his federal constitutional claim to the state courts in the manner required by state procedural law, and the state courts impose the procedural bar of refusing to review the merits of the alleged error.  Even constitutional errors will not be noticed on federal habeas corpus review if an adequate and independent state law ground exists for upholding the conviction or sentence.  *Coleman v.*

9

*Thompson,* 501 U.S. 722, 729-32 (1991).

However, the procedural default may be excused if the petitioner shows cause for the procedural default and prejudice from the alleged error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Specifically, the Sixth Circuit's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule. First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Id.* at 138. Second, the court must decide whether the state courts actually enforced its procedural sanction. *Id.* Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. Such a rule is adequate if it is regularly or consistently applied by the state court, *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and is independent if it does not depend on a federal constitutional ruling. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *See also Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice").

10

Under the second prong of the *Maupin* analysis, the court must actually rely on the procedural bar as an independent basis for its disposition of the case.  *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (The last state court rendering a reasoned judgment on the matter must "clearly and expressly" state that its judgment rests on such a procedural bar for the doctrine of procedural default to apply). However, the court may actually enforce its procedural sanction and still review the merits of the case, as long as the decision on the merits is considered an alternative holding.  *See Bowling v. Parker*, 2003 FED App. 0330P (6th Cir. Sept. 17, 2003); *see also Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding").  Further, review by a state court of an otherwise procedurally defaulted claim to determine whether the error, if any, constituted a manifest miscarriage of justice does not revive the defaulted claim for purposes of federal habeas corpus review.  *Scott v. Mitchell*, 209 F.3d 854, 868 (6th Cir. 2000) ("manifest injustice" review by state court of defaulted claim does not constitute waiver of the default); *see also Seymour v. Walker*, 224 F.3d, 542, 557 (6th Cir. 2000) (Court of Appeals' plain error review does not constitute waiver of state procedural rules).

Respondent asserts that Keeton has procedurally defaulted his third, eighth, and ninth grounds for relief.

**A.      Ground Three: Trial Court's Dismissal of Prospective Jurors**

In his third ground for relief, Keeton claims the trial court erred when it excused prospective jurors for cause without granting the defense an opportunity to inquire whether they could be fair and impartial.  During *voir dire*, Juror Deborah Fagan stated that she:  knew one of

11

the victims; had trouble with the victim in the past; and would have difficulty being objective regarding the victim's testimony.  (Tr. 18.)  After the prosecutor read the names of potential witnesses in the case, Juror Christopher Coffman stated that he:  knew Detective Bob Mack because Detective Mack put his father in prison; did not like Detective Mack; and could not be objective or uninfluenced because of the situation between Detective Mack and his father.  (*Id.* at 21-25.)  Keeton claims that the trial court excused these jurors without giving defense counsel an opportunity to question these jurors.

In dismissing this claim, the Court of Appeals indicated that Keeton's trial counsel did not object to the dismissal of the prospective jurors for cause and reviewed the claim for plain error.  The Court of Appeals held that the trial court did not commit plain error.

The Court of Appeals expressly relied upon and enforced the contemporaneous objection rule, a state procedural bar, to dismiss this claim.  The Court of Appeals' plain error review does not excuse the court's reliance on the state procedural rule in dismissing the claims.  *See Scott*, 209 F.3d at 868.  Further, the Sixth Circuit has held the contemporaneous objection rule is an "adequate and independent" state ground.  *Id.* at 869.

Keeton has not shown cause for the default or resulting prejudice.  Accordingly, this claim should be dismissed.

Further, as discussed below,  his counsel was not ineffective for failing to object to the juror's dismissal.  *See* Section IV.F.7 *infra*.

**B.      Grounds Eight and Nine: Insufficiency of the Evidence**

In his eighth and ninth grounds for relief, Keeton claims that there was insufficient evidence to sustain his convictions for tampering with evidence, bribery, kidnaping, and rape.

12

Keeton also claims that the indictment was insufficient to give him proper notice of the tampering offense.

### 1.        Tampering With Evidence

In dismissing this claim, the Court of Appeals noted that Keeton's trial counsel did not raise any objection regarding the charge of tampering with evidence, and reviewed the claim solely for plain error.  The Court of Appeals expressly relied upon and enforced the state procedural bar to dismiss this claim.  Further, Keeton has not shown cause for the default or resulting prejudice.  Accordingly, this claim should be dismissed.

### 2.        Bribery, Kidnaping, and Rape

In dismissing these claims, the Court of Appeals stated that Keeton did not preserve these issues for appeal because he did not file a motion for acquittal pursuant to Crim.R. 29.  The Court of Appeals expressly relied on and enforced Crim.R. 29, a state procedural rule.  Further, Keeton has not shown cause for the default or resulting prejudice.  Accordingly, this claim should be dismissed.

### III.  Standard of Review under the AEDPA - Review on Merits

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Keeton filed his habeas petition after the effective date of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law can be determined only by examining the holdings of United States Supreme Court, as opposed to dicta. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Nevertheless, an explicit statement by the Supreme Court is not required; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002)). As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court. *Williams*, 529 U.S. at 412.

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* An incorrect state court decision may not be unreasonable under this standard. *Id.* at 410-11. For this reason, a federal habeas court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the federal

14

court must determine that the state court decision is an objectively unreasonable application of

federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-

court decisions."  *Strickland v. Pitcher*, No. 03-2113, 2006 WL 68438, at *4 (6th Cir. Jan.10,

2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998) ("[AEDPA] tells federal

courts: Hands off, unless the judgment in place is based on an error grave enough to

be called unreasonable.")).  The "unreasonable" requirement is a high bar. *Ruimveld*, 404 F.3d at

1010.

### IV.  Analysis: Review on Merits

**A.      Ground One: Admission of Letter**

Keeton claims that he was denied his constitutional right of confrontation and cross-

examination when the trial court admitted into evidence a letter written by Richard Myers, a

person who did not testify at trial.  A prison guard found the letter in Keeton's jail cell.  In the

letter, Myers informed Keeton that they had to get their "stories straight" and set forth a version

of the events.  At trial, the State introduced the letter to show that Keeton, Myers, and Flannery

engaged in a conspiracy.  The trial court admitted the letter into evidence on the basis that it was

a statement of a co-conspirator made in furtherance of a conspiracy.  By admitting the letter,

Keeton asserts the trial court violated *Crawford v. Washingto*n, 541 U.S. 36 (2004).

The Sixth Amendment guarantees a criminal defendant the right to be confronted with

the witnesses against him.  U.S. Const. amend VI.  Until recently, however, any out-of-court

testimonial statement made by an unavailable declarant could be admitted provided that the

judge found that it bore adequate indicia of reliability.  *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).

The Court in *Roberts* maintained that "reliability can be inferred without more in a case where

the evidence falls within a firmly rooted hearsay exception.  In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."  *Id.* Applying such logic, the Supreme Court held that the statement of a non-testifying declarant could be used against a defendant at trial so long as the declarant was unavailable and the statement was reliable.  *Id.*; *see also U.S. v. Pugh*, 405 F.3d 390, 398 (6th Cir. 2005).

In 2004, however, the Supreme Court limited the rule established in *Roberts* as it relates to the admissibility of hearsay testimony.  *See Crawford v. Washington*, 541 U.S. 36 (2004).  In *Crawford*, the Court examined the "bedrock procedural guarantee" of an accused's right to confront witnesses who testify against him.  The Court in *Crawford* struck down an evidentiary ruling that dispensed with a defendant's right of confrontation simply because the challenged testimony had been found reliable by a judge.  The Court made it abundantly clear that "where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."  *Id.* at 68. The Court found that *testimonial* statements of witnesses absent from trial may be admitted (1) only where the declarant is unavailable, and (2) only where the defendant has had a prior opportunity to cross-examine the witness.  *Id.* at 59.

### 1.    *Crawford* or *Roberts*

Respondent asserts that *Roberts* is the applicable law because the Supreme Court decided *Crawford* after the trial court sentenced Keeton.  Respondent relies on *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005).  In *Dorchy*, although *Crawford* had been decided before the defendant's habeas petition, the court applied *Roberts* because that was the law at the time of the defendant's direct appeal in the state courts.

16

*Dorchy* is distinguishable from the instant action.  In the instant action, the Supreme

Court decided *Crawford* while Keeton's *direct appeal was pending* in the Court of Appeals.  *See*

*Griffith v. Kentucky*, 479 U.S. 314, 323 (1987) (defendants whose cases are pending on direct

appeal at the time of the law-changing decision are entitled to invoke the new rule).  The

Supreme Court decided *Crawford* on March 8, 2004; the Court of Appeals issued its opinion on

July 9, 2004.  In fact, Keeton filed a Notice of New Authority discussing *Crawford* in the Court

of Appeals on April 20, 2004.  Therefore, *Crawford* was the applicable law when the Court of

Appeals reviewed Keeton's claim.  *See Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004)

("Review is conducted in light of the law as it existed at the time of the final state court

decision . . . .")

However, as discussed below, Keeton's right to confrontation was not violated under

*Crawford*.  *See* IV.A.2.a *infra*.

> **2.      Review on Merits**

>> **a.      Constitutional Violation**

*Crawford's* requirement that the defendant must have the opportunity to cross-examine

the person giving the statement applies only to *testimonial* statements.  While the Court in

*Crawford* did not define what constitutes a testimonial statement, it indicated that the term

"applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a

former trial; and to police interrogations." *Id.* at 68.  The Sixth Circuit has stated that the proper

inquiry in deciding whether a statement is testimonial for evidentiary purposes is "whether a

reasonable person in the declarant's position would anticipate his statement being used against

the accused in investigating and prosecuting the crime."  *Pugh*, 405 F.3d at 399.

17

In the instant action, Myers' letter was not a testimonial statement.  A reasonable person in Myers' position would not anticipate his letter being used against Keeton in his trial.  Myers did not write the letter to incriminate Keeton.  Instead, Myers conspired with Keeton in an attempt to avoid prosecution by having a consistent version of the events.  Moreover, as this Court discusses below, this Court gives deference to the Court of Appeals' review of a state evidentiary finding that the letter was a statement made by a co-conspirator.  Statements made by a co-conspirator are not testimonial in nature.  *Crawford*, 541 U.S. at 55; *see also U.S. v. Sexton*, 119 Fed. Appx. 735, 743 (6th Cir. 2005) (unpublished) (statements of co-conspirators were admissible under *Crawford*.).

Therefore, Keeton's right to confrontation was not violated.

### b.    State Violation

Keeton claims that: (1) the trial court did not properly consider Ohio Evid. R. 801(D)(2)(e);[2] and (2) the prosecution did not meet its burden that a conspiracy existed, that Keeton was a member of the conspiracy, and that the letter was written in the course and furtherance of the conspiracy; and (3) there was no independent proof of an alleged conspiracy. In holding that the trial court complied with Ohio Evid. R. 801(D)(2)(e) when it admitted the letter into evidence, the Court of Appeals relied solely on state law and found that the conspiracy did not terminate following the arrests of Keeton, Myers, and Flannery because they continued to conspire to avoid conviction.  The Court of Appeals reasoned that Myers wrote the letter to

---

[2] Keeton claims that the trial court misstated the evidentiary rule.  However, this Court defers to the state court's interpretation of its own laws.  *See Allen v. Morris*, 845 F.2d 610 (6th Cir. 1988); *see also Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (principles of comity require federal courts to defer to a state's judgment on issues of state law.).

18

Keeton for this purpose.

Alleged trial court errors in the application of evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights."  *See Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).

Ohio Evid. R. 801(D)(2)(e) provides that a statement is not hearsay if it is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.  Under Ohio procedure, there must be existence of the conspiracy by independent proof.  *Anthony v. Dewitt*, 295 F.3d 554, 561-62 (6th Cir. 2002).  Further, in finding that a conspiracy does not necessarily end with the commission of a crime, the Ohio Supreme Court has interpreted the language of Rule 801(D)(2)(e) to permit the admission of out-of-court statements of a co-conspirator made during concealment of the crime. *Id.*

In the instant action, the trial court's admission of Myers' letter did not violate Keeton's due process rights.  As the Court of Appeals found, the conspiracy included the co-conspirator's attempt to avoid conviction of the crimes through Myers' letter.  Further, Keeton was clearly involved in the ongoing conspiracy, as the letter was addressed to him and discovered in his cell. The trial court also found that the victims' testimony served as independent proof that a conspiracy existed.  Thus, Keeton's due process rights were not violated.  This claim should be dismissed.

19

**B.      Ground Two:  Sentence Based on Improper Findings**

Keeton claims that the trial court imposed consecutive sentences on findings not alleged in the indictment or found by the jury in its verdict in violation of *Blakely v. Washington*, 542 U.S. 296 (2004).  The trial court imposed consecutive sentences on five of the counts totaling forty years.  In state court, Keeton claimed that the trial court failed to make the finding required under state law before imposing consecutive sentences; and therefore, improperly imposed a sentence that exceeded the maximum for the offense.  Keeton briefly argued that the trial court based the sentence on personal knowledge, and not information presented at trial.  In a motion for reconsideration, Keeton relied on *Blakely* in support of his claim.

In *Blakely*, the defendant pleaded guilty to kidnapping his estranged wife.  Although the maximum sentence for the offense was fifty-three months, the judge imposed a ninety-month sentence after finding that the defendant acted with deliberate cruelty, a statutorily enumerated ground for departing from the standard range.  The Supreme Court held that the sentence violated the defendant's Sixth Amendment right to trial by jury because the facts supporting his exceptional sentence were neither admitted by him nor found by a jury.

Respondent argues that *Blakely* is inapplicable to the instant action because it was not decided when Keeton was sentenced and the Sixth Circuit does not apply *Blakely* retroactively. This argument is without merit.  A defendant whose case is pending on direct appeal at the time of the law-changing decision is entitled to invoke the new rule.  *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987); *see also Mitzel v. Tate*, 267 F.3d 524, 531 (6th Cir. 2001) ("[W]e are limited to an examination of the Supreme Court's holdings as they existed at the time of the relevant state court decision."); *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004) ("Review is conducted in

20

light of the law as it existed at the time of the final state court decision . . . .")  The Supreme

Court decided *Blakely* approximately two weeks before the Court of Appeals ruled on Keeton's

direct appeal.  Therefore, Keeton's appeal was pending on direct appeal when the Supreme Court

decided *Blakely*.   Accordingly, *Blakely* provides the law applicable to Keeton's sentencing.

Moreover, while the instant petition was pending with this Court, the Ohio Supreme

Court held in *State v. Foster*, 109 Ohio St.3d 1 (2006), that Ohio Revised Code § 2929.14(E)(4),

(a provision setting forth the procedure for imposing consecutive sentences) is unconstitutional

under the rule pronounced in *Blakely*.  Specifically, the Ohio Supreme Court reasoned:

> R.C. 2929.14(E)(4) requires the court to find that 'the consecutive
> service is necessary to protect the public from future crime or to
> punish the offender and that consecutive sentences are not
> disproportionate to the seriousness of the offender's conduct and to
> the danger the offender poses to the public.'  In addition, at least
> one of three more findings of fact must be found:  that the offender
> was already under control of the court due to an earlier conviction,
> that at least two of the offenses were committed as part of a course
> of conduct and the harm was so great or unusual that no single
> prison term adequately reflects the seriousness of the conduct, or
> that '[t]he offender's history of criminal conduct demonstrates that
> consecutive sentences are necessary to protect the public.'

> While other state courts have held that their statutes on consecutive
> sentences do not violate *Blakely*, Ohio appears to be unique in
> having a rule that sentences of imprisonment shall be served
> concurrently. R.C. 2929.41(A) states, "*Except as provided in*
> division (B) of this section, *division (E) of section 2929.14*, or
> division (D) or (E) of section 2971.03 of the Revised Code, *a
> prison term*, jail term, or sentence of imprisonment *shall be served
> concurrently* with any other prison term."  (Emphasis added.)
> Thus, except for certain enumerated statutes imposing non-
> discretionary consecutive terms, judicial fact-finding must occur
> before consecutive sentences may be imposed under R.C.
> 2929.14(E)(4).  We have held previously that R.C. 2929.14(E)(4)
> and 2929.19(B)(2)(c) require trial courts that impose consecutive
> sentences to make the statutorily enumerated findings and to give

21

reasons at the sentencing hearing to support those findings for
review on appeal.

Thus, with limited exceptions, the Ohio Revised Code provides
that consecutive sentences in Ohio may not be imposed except
after additional fact-finding by the judge.  In *State v. Lett*, 161
Ohio App.3d 275, an *en banc* decision, the Eighth Appellate
District held that *Blakely* is inapplicable because 'the facts found
by the court do not increase the maximum penalty for an individual
offense.'  This is true; nevertheless, because the total punishment
increases only after judicial findings beyond those determined by a
jury or stipulated by a defendant, R.C. 2929.14(E)(4) violates
principles announced in *Blakely*.

*Id.* at 21-23. (citations omitted) (emphasis in original).

After determining that O.R.C. § 2929.14(E)(4) was unconstitutional in light of *Blakely*,

the Ohio Supreme Court excised this provision, such that "judicial finding is not required before

the imposition of consecutive prison terms."  *Id.* at 29.   The Ohio Supreme Court further stated,

"Accordingly, we have concluded that trial courts have full discretion to impose a prison

sentence within the statutory range and are no longer required to make findings or give their

reasons for imposing maximum, consecutive, or more than the minimum sentences."  *Id.* at 30.

Thus, Keeton is correct that the findings made by the trial judge pursuant to the Ohio

statues in imposing consecutive sentences was unconstitutional under the rule announced in

*Blakely*.  However, the Ohio Supreme Court has determined that the remedy is to sever the

offending provisions of the statute, and, for cases pending on appeal when *Blakely* was decided,

to vacate sentences, and remand those cases for resentencing.  Upon remand, the state trial court

judges have full discretion to impose a prison sentence within the statutory range and are no

longer required to make findings or give reasons for imposing maximum or consecutive

22

sentences. *Foster*, 109 Ohio St.3d at 30.[3]

As Keeton was sentenced to consecutive sentences pursuant to O.R.C. § 2929.14(E)(4), the Magistrate Judge recommends that the instant action be remanded to the state courts for resentencing consistent with *Foster* and *Blakely*.

**C.      Ground Four: Conviction of an Offense Not in County of Trial**

Keeton claims that the State did not show beyond a reasonable doubt that the alleged offenses were committed in the county where his trial was held.  Although Keeton was tried in Richland County, he claims the alleged events and offenses occurred in Ashland County. Keeton asserts that the trial court's instruction on venue, and the statute upon which it relied for the instruction, violate the Ohio Constitution.  The trial court instructed the jury:

> When a crime or element of a crime is committed in a motor vehicle and it cannot be reasonably determined in which jurisdiction the crime was committed the accused person can be tried in any county through which the motor vehicle passed during the crime. Consequently, if you conclude that a crime occurred in a motor vehicle and during the crime the car passed through Richland County, that would be sufficient to prove venue in Richland County, Ohio."

(Tr. 1008-09.)

Although Keeton made a vague reference to the Sixth Amendment in his state brief, he presented this claim to the state court as solely an issue of state law, *i.e.*, a violation of the Ohio Constitution.   Furthermore, Keeton has not articulated how improper venue violates the Sixth

---

[3]Ironically, this remedy may not be favorable to Keeton.  The Ohio Supreme Court noted that upon remand, the State would be able to seek greater penalties. *Foster*, 109 Ohio St.3d at 31.

Amendment, nor has he cited any federal authority in support. Assuming *arguendo*, that Keeton fairly presented his claim to the state court and presents a constitutional claim to this Court, his claim would fail.

The Sixth Amendment provides that an accused has a right to jury trial in the "State and district wherein the crime shall have been committed." However, the Sixth Circuit, as well as other circuits, have held that the language requiring a person be tried in the district where the crime was allegedly committed does not apply to the States. *See Caudill v. Scott*, 857 F.2d 344 (6th Cir. 1988); *see also Stevenson v. Lewis*, 384 F.3d 1069 (9th Cir. 2004); *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986); *Zicarelli v. Dietz*, 633 F.2d 312 (3rd Cir. 1980). The term "districts" as used in the Amendment refers only to federal judicial districts. *Caudill*, 857 F.2d at 346. As the Supreme Court has not spoken on this issue and the circuit courts that have spoken on the issue have agreed with the Sixth Circuit, Keeton has not demonstrated that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.

To the extent that Keeton is asserting a general due process claim, it also fails. In dismissing this claim, the Court of Appeals held that Richland County was the proper venue pursuant to O.R.C. §§ 2901.12(B) and (H).[4] As this claim is solely an issue of state law, this

---

[4] O.R.C. § 2901.12 states in relevant part:

(B) When the offense or any element of the offense was committed in an aircraft, motor vehicle, train, watercraft, or other vehicle, in transit, and it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in any jurisdiction through which the aircraft, motor vehicle, train, watercraft, or other vehicle passed.

* * * *

(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without

24

Court will give deference to the Court of Appeals' decision and review the claim solely for a due process violation. *See Allen v. Morris*, 845 F.2d 610 (6th Cir. 1988); *see also Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In the instant action, Keeton has not shown that he was denied fundamental fairness in the trial process. The record supports the Court of Appeals' finding that many elements of the crimes occurred in the chain of events and line of travel within Richland County. In fact, this claim on behalf of Keeton appears to be frivolous. The record contains testimony that: Keeton became angry and accused the victims of stealing money at the Speedway gas station in Richland County; the offenses occurred while Keeton, the co-conspirators, and the victims traveled from Richland County, through Morrow and Ashland County, back to Richland County; one of the victim's shorts and underwear were found along the road in Richland County; Keeton struck the victims and returned to his residence in Richland County; and Keeton's actions regarding the bribery offense occurred while he was in the Richland County jail. (Tr. 133-174, 631-632, 680-

---

limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

> (1) The offenses involved the same victim, or victims of the same type or from the same group.
>
> (2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.
>
> (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
>
> (4) The offenses were committed in furtherance of the same conspiracy.
>
> (5) The offenses involved the same or a similar modus operandi.
>
> (6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

682, 775, 816, 864, 910-916, 920-922, 949-950.)  The record clearly shows that Keeton

committed the offenses in a vehicle that traveled into several counties, with Richland County as

the first and last in the chain of events.  Keeton's due process rights were not violated.

Accordingly, this claim should be dismissed.

**D.      Ground Five: Prosecutorial Misconduct**

Keeton claims that he was denied a fair trial when the prosecutor made improper

comments during closing arguments.  The prosecutor stated, "The facts in this case have been

proven to you beyond a reasonable doubt," and "George Keeton is guilty beyond a reasonable

doubt of each and every one of the ten counts of the indictment." (Tr. 981, 983.)  The prosecutor

also stated:

> There is absolutely *no believable evidence contrary to what [the*
> *victims] said*.  They have been totally consistent in what they have
> told you.

> When you're looking at the issue of credibility of the witnesses I
> want you to consider a few other things.  Remember when this first
> happened, Anna and Ashley, Anna first was let out at the Rupple
> house, Ashley went to the Wander house, and they told Mr. Rupple
> as well as Mr. Wander what happened. They told Sergeant Simms
> what happened.  They told the EMS guys what happened.  They
> told Dr. Cover, the SANE nurses what happened.  The girls told all
> these people right after this incident happened virtually the same
> story.  They were separate and apart from each other.  They had
> absolutely no opportunity to get together, to concoct a story, to get
> the story straight, because they were separated as a result of what
> George Keeton and his buddies did.  And again, their two stories to
> all of those people were amazingly consistent.

> If [the victims] were lying to you how would that happen?  How
> would that happen?  They had no chance to get their stories
> straight, no chance to get together and make up lies, and there is a

26

reason for that.  It's because they're *telling you the truth*.  There is
no other explanation.

\*\*\*

George Keeton got on that witness stand and did in fact tell you
that story and *tell you a lie*.

\*\*\*

The incident you heard over these last four days was one of the
*worst crimes that has ever been heard in this courtroom*.

(Tr. 984-985, 986, 997.)  Further, after the prosecutor recited a mock verdict of guilty on all

counts, he stated, "Those are the words George Keeton needs to hear from you.  Those are the

words of justice in this courtroom that he needs to hear."  (Tr. 998.)

In regard to the prosecutor's comment that the facts were proved beyond a reasonable

doubt, the Court of Appeals found that the prosecutor's comment was not improper.  In regard to

the prosecutor's comment on the truthfulness of the victim's testimony, the Court of Appeals

found that the comment was not improper because the prosecutor did not express his personal

belief as to the credibility of the victims; instead the prosecutor informed the jurors on how to

consider the issue of credibility.  The Court of Appeals reasoned that the prosecutor simply

referred to the evidence presented, and due to the consistency of such evidence, stated that the

victims were telling the truth.  The Court of Appeals also stated that even if this comment was

improper, it did not prejudice Keeton.

To constitute a constitutional violation, a prosecutor's misconduct must "so infect[] the

trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v.

DeChristoforo*, 416 U.S. 637, 642 (1974).   The Sixth Circuit has set forth a totality of the

circumstances approach to evaluate alleged instances of prosecutorial misconduct, that include

27

the following factors:  (1) the degree to which the remarks complained of have a tendency to mislead the jury and prejudice the accused; (2) whether the remarks are isolated or extensive; (3) whether the remarks were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused.  *Hill v. Brigano*, 199 F.3d 833, 847 (6th Cir. 1999) (quoting *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)).  Further, instances of prosecutorial misconduct are subject to harmless error analysis.  *See Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

In the instant action, the prosecutor's comments that the facts had been proven and Keeton was guilty beyond a reasonable doubt were not improper.  The prosecutor was not expressing his opinion or belief, but instead argued what the evidence showed and provided the jurors with the State's position and the conclusion he wanted them to reach.  Further, even if these comments were improper, Keeton was not prejudiced by such comments.  There was strong evidence establishing Keeton's guilt.  *See* IV.F.7 *infra*.

In regard to the prosecutor's comments that the victims were truthful, these statements did not constitute improper vouching.[5]  The prosecutor did not give his personal opinion as to the

---

[5]In *United States v. Francis,* 170 F.3d 546 (6th Cir. 1999), the Sixth Circuit explained what constitutes improper vouching:

Generally, improper vouching involves either blunt comments, *see, e.g., United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir.1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, *see, e.g., Carroll*, 26 F.3d at 1388 (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful).

28

credibility of the witnesses, but instead indicated they were truthful due to the consistency of the evidence, *i.e.*, their stories were the same although they had no opportunity to confer.

In regard to the prosecutor's comments that Keeton told a lie, this Court questions whether the comment was proper.  However, the comment did not deprive Keeton of a fair trial due to the strong evidence of Keeton's guilt.  Similarly, in regard to the prosecutor's comment that the offense was one of the worst crimes ever heard in that courtroom, any prejudice was minimal.  Therefore, the Court of Appeals' decision is neither contrary to, nor an unreasonable application of clearly established federal law.  Accordingly, this claim should be dismissed.

## E.      Ground Six: Deficient Jury Instructions

In his sixth ground for relief, Keeton alleges that the court's jury instructions on aiding and abetting were deficient because they did not require the State to prove Keeton possessed the culpable mental state needed for the commission of the underlying offense of kidnapping.[6]  On the offense of aiding and abetting kidnapping, the trial court instructed the jury:

> [Keeton is] charged first with aiding and abetting the kidnapping of Ashley, or Anna Adkins and Ashley Gaines.  Before you can find him guilty of either of those crimes you must find beyond a reasonable doubt that on or about August 19, 2002 in Richland County, Ohio he aided or abetted another who did by force or threat remove the relevant victim, Anna Adkins in the first charge, and Ashley Gaines in the second charge, from the place where she was found, or restrained her of her liberty for the purpose of engaging in sexual activity with her against her will.
>
> * * *

---

[6] O.R.C. § 2923.03(A)(2) states:

No person, acting with the kind of culpability required for the commission of an offense, shall aid or abet another in committing the offense.

29

> I've used the terms aided or abetted another in a kidnapping.
> Aided or abetted means supported, assisted, encouraged,
> cooperated with, advised or incited.  Mr. Keeton cannot be found
> guilty of aiding or abetting a crime unless the crime was actually
> committed, but it is no defense to a charge of aiding or abetting a
> crime that no person whom Mr. Keeton aided or abetted has
> already been convicted of a crime as the principle [sic] offender.

(Tr. 1008-09.)  In dismissing this claim, the Court of Appeals found that the trial court's instruction on aiding and abetting was not erroneous; and even if the instruction was erroneous, it did not rise to the level of plain error.[7]

To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 75 (1991).  The category of infractions that violate fundamental fairness is exceedingly narrow, as the Due Process Clause has limited application beyond the specific guarantees enumerated in the Bill of Rights.  *See id.* at 72.  An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly.  *See Coe v. Bell*, 161 F.3d 320, 329 (6th Cir.1998).  Allegations of "trial error" raised in challenges to jury instructions are reviewed for whether they had a substantial and injurious effect or influence on the verdict, and are subject to harmless error

---

[7] Respondent claims that Keeton procedurally defaulted this claim because the Court of Appeals expressly relied on and applied the contemporaneous objection rule in dismissing this claim.  Respondent's argument is without merit.  Although the Court of Appeals noted that Keeton's counsel did not object to the jury instructions and stated that any error was harmless, it did not expressly rely on the procedural rule.  Before the Court of Appeals even addressed counsel's failure to object or set forth any plain error discussion, it analyzed the claim and concluded the instruction did not deny Keeton due process because it was not erroneous.  This would have been the same analysis had Keeton's counsel objected.  Therefore, this Court will review the merits.

analysis. *See Gilliam v. Mitchell*, 179 F.3d 990, 994-95 (6th Cir.1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

In the instant action, the jury instructions on aiding and abetting kidnapping did not have a substantial and injurious effect or influence on the verdict. The trial court instructed the jury on aiding and abetting kidnapping and defined "aiding and abetting." Further, the trial court indicated that Keeton could not be found guilty of aiding and abetting unless the principal offense of kidnapping actually had been committed. Ohio courts that have addressed this issue held that a defendant is not prejudiced when a complicity instruction does not refer specifically to the culpable mental state if the instructions for the underlying offenses include the requisite mental state. *See State v. Head*, Lake App. No.2001-L-228, 2005-Ohio-3407, citing *State v. Dykes* (Dec. 17, 1993), Lake App. No. 92-L-078; *see also, State v. Axson*, Cuyahoga App. 81231, 2003-Ohio-2182.

In addition, Keeton's mental state was not at issue in this case. His defense was that no kidnapping occurred. Given the strong evidence against Keeton – including his own acknowledgment that he beat the victims and forced them to strip naked, as well as evidence that he ordered the driver to speed up the vehicle when one victim attempted to flee the vehicle and ordered the other co-conspirator to hold onto the hair of one victim so she could not get out the vehicle – the trial court's failure to specifically address the culpable mental state was harmless at most. Therefore, the Court of Appeals' decision is neither contrary to, nor an unreasonable application of clearly established federal law. Accordingly, this claim should be dismissed.

## F.    Ground Seven: Ineffective Assistance of Trial Counsel

In his seventh ground for relief, Keeton claims that he was denied effective trial counsel

31

when his counsel:  (1) virtually conceded Keeton's guilt during closing argument; (2) failed to

make an opening statement; (3) failed to make a motion for judgment of acquittal; (4) failed to

file a motion to suppress; (5) failed to file a motion to dismiss by lack of a speedy trial; (6) failed

to request an instruction on consent; (7) failed to object to jurors being excused for cause; (8)

enhanced the State's evidence on cross-examination; (9) failed to object to opinion testimony by

witnesses; (10) failed to object to opinions on truth or veracity; (11) failed to request a lesser

instruction on assault and gross sexual imposition; (12) failed to object to experimental evidence;

(13) failed to examine evidence or conduct an investigation; (14) failed to say anything at

sentencing; (15) failed to object to irrelevant evidence; (16) failed to object to irrelevant and

inflammatory evidence; (17) agreed to amend the indictment.

In order to establish ineffective assistance of counsel, the petitioner must show that his

counsel's performance fell below an objective standard of reasonableness and that his counsel's

errors were so serious as to prejudice the petitioner.  *Strickland v. Washington*, 466 U.S. 668,

687-88 (1984).  "[C]ounsel is strongly presumed to have rendered adequate assistance and made

all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.

Deficiencies in counsel's performance must "be prejudicial to the defense in order to constitute

ineffective assistance."  *Id.* at 692.  To establish prejudice under *Strickland*, the petitioner "must

show that there is a reasonable probability that, but for the counsel's unprofessional errors, the

result of the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  *Id.* at 694.

As this Court discusses in detail below, the Court of Appeals' decision denying Keeton's

seventeen sub-claims of ineffective trial counsel is neither contrary to, nor an unreasonable

application of clearly established federal law.

### 1.        Conceding Guilt in Closing Argument

Keeton claims that his trial counsel's closing argument lacked any advocacy on his behalf.  In the closing argument, defense counsel stated:  the prosecutor's statements are not evidence and the jury has to decide what is evidence; Keeton has the presumption of innocence and proof of his guilt has to be established beyond a reasonable doubt; twenty-six witnesses testified, two for Keeton; the jury has to determine the accuracy of the testimony and consider the forensic and scientific evidence; and he hoped the jury would weigh and evaluate the evidence and arrive at a verdict that is fair and just to the State and Keeton.  (Tr. 991-93.)  Further, Keeton asserts that defense counsel did not indicate during closing argument that the sex with the victims was consensual.  In dismissing this claim, the Court of Appeals found that defense counsel's closing argument did not concede Keeton's guilt and was sound trial strategy based upon the evidence presented to the jury.

The right to effective assistance extends to closing arguments.  *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).  Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage.  *Id.*  Judicial review of a defense attorney's summation is therefore highly deferential – and doubly deferential when it is conducted through the lens of federal habeas.  *Id.* at 6.

At the trial in this case, defense counsel did not concede Keeton's guilt.  Counsel reminded the jury that Keeton was presumed innocent.  Counsel also stated that the jury should consider and weigh all of the evidence, especially his cross-examination of the nurses and

doctors and the nurses' reports.  Further, Keeton testified that the victim voluntarily performed oral sex on him and denied that he had any intercourse with the victim.  Although defense counsel did not mention this during closing argument, the jury heard the argument when Keeton testified.  Keeton has not shown that his defense counsel's closing argument was something other than a matter of trial strategy.  *See Strickland*, 466 U.S. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (disagreements by a defendant with tactics and/or strategies will not support a claim of ineffective assistance of counsel; and a petitioner in habeas corpus must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy).  Defense counsel's closing argument on behalf of Keeton was not deficient and did not prejudice Keeton.

### 2.        Failure to Make Opening Statement

Keeton asserts that his counsel failed to make an opening statement.  Keeton claims that the jury knew the basis of the State's case after its opening statement, but did not know his defense.  In dismissing this claim, the Court of Appeals held that Keeton did not establish that defense counsel's failure to make an opening statement denied him effective counsel.

An attorney's decision not to make an opening statement is ordinarily a mere matter of trial tactics and will not constitute a claim of ineffective assistance of counsel.  *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004).  Keeton has not shown that his defense counsel's failure to make an opening statement was something other than a matter of trial tactics.

### 3.        Failure to Make a Motion for Judgment of Acquittal

Keeton asserts that his counsel did not make a motion for judgment of acquittal pursuant

to Crim.R. 29 at the close of the State's case or at the close of all evidence.[8]  In connection with this claim, Keeton does not identify what facts would have supported such a motion.  However, elsewhere in his Traverse,  Keeton claims that there was insufficient evidence to support the tampering with evidence, bribery, kidnapping, and rape convictions.[9]  In dismissing this claim, the Court of Appeals held that there was sufficient evidence as to each element of the offenses and a motion for acquittal, therefore would have been meritless.

### a.    Tampering with Evidence

Pursuant to O.R.C. § 2921.12, a person is guilty of tampering with evidence if he "know[s] that an official proceeding or investigation is in progress, or is about to be or likely to be instituted . . . [and] [a]lter[s], destroy[s], conceal[s], or remove[s] any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."  In the instant action, the prosecution presented evidence of, and Keeton himself testified to the fact that he ordered the victims to remove their clothing and he later tossed the clothing out of the vehicle.  In addition, evidence was presented that Keeton broke the victim's car window to move the car from the location where it originally had been parked earlier in the night – a location that could have connected the victims to Keeton and/or his co-conspirators.

---

[8] Crim. R. 29(A) states, in part:

The court on motion of a defendant . . . shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

[9] Under Ohio law, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Bridgeman*, 55 Ohio St.2d 261 (1978).

More than sufficient evidence existed on which a jury could conclude that the state proved  the elements of a tampering with evidence beyond a reasonable doubt.

### b.    Bribery

Ohio Revised Code § 2921.02(A) provides, in pertinent part: "No person, with purpose to corrupt a public servant . . . or improperly to influence him with regard to the discharge of his duty . . . shall offer any valuable thing or valuable benefit."   In the instant action, sufficient evidence existed to convict Keeton of bribery under this statute.  The evidence presented demonstrated that: (1) Keeton and his co-conspirator Richard Myers were incarcerated in Richland County jail on August 24, 2002; (2) on that date, Keeton asked corrections officer, Tommy Thiesen, "do you want to make $50.00?"; (3) at that time Keeton was not permitted to have contact with Myers; (4) Keeton told Thiesen that the reason he offered $50.00 was so that he could have contact with Myers; and (5) Keeton knew he was not permitted to have contact with Myers.  (Tr. 679-82, 920).   This evidence was sufficient for a reasonable juror to convict Keeton of bribery.

### c.    Kidnappping

Ohio Revised Code § 2905.01(A)(4) provides in relevant part:

> No person, by force, threat, or deception . . . shall remove another from the place where the other person is found or restrain the liberty of the other person . . . [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will . . . .

In the present case, sufficient evidence exists to convict Keeton of kidnapping under this statute. The prosecution presented the following evidence:  (1) both victims testified that Keeton, by

threat and force restrained their liberty to engage in sexual activity; (2) the victim's injuries were consistent with being restrained by force; (3) Keeton admitted he struck both victims with his fists, did not deny that he ordered them to remove their clothing, and did not deny that he threatened the victims; (4) Keeton ordered the driver of the vehicle to "go" when one of the victims attempted to escape the vehicle; (5) Keeton ordered one of his co-defendants to restrain one of the victims by holding onto her hair so she could not escape when the other victim was freed;  and (6) the victim's restraint was a minimum of 45 minutes.  As such, the evidence is sufficient that  a reasonable juror could find Keeton guilty of kidnapping beyond a reasonable doubt.

### d. Rape

Finally, Keeton argues that insufficient evidence existed to convict him of rape because the sexual activity was consensual.   However, the testimony of both victims was that the sexual activity was not consensual  Moreover, the victims' injuries corroborated their testimony  and the circumstances surrounding the incident supported it.  Therefore, Keeton's argument that there was insufficient evidence lacks merit.

Because there was sufficient evidence for a reasonable juror to convict Keeton of all the offenses, counsel was not deficient for failing to file a motion for acquittal pursuant to Criminal Rule 29.   Therefore, Keeton cannot demonstrate ineffective assistance of counsel in this instance.

### 4. Failure to File a Motion to Suppress

Keeton claims that his counsel failed to file a motion to suppress although:  (1) Keeton

37

was arrested without a warrant in his motel room; (2) his phone calls were intercepted and recorded without a warrant or consent; and (3) his trial preparation papers were seized from his cell without a warrant.

In dismissing the part of the claim regarding the phone calls, the Court of Appeals expressly relied on App.R. 16(A)(3), a state procedural rule, because Keeton failed to reference the alleged error in the record.  Keeton has not shown cause for this default or resulting prejudice.  Therefore, this Court will not address this part of Keeton's claim on the merits.

In regard to the State's alleged warrantless arrest of Keeton in his hotel room and as the Court of Appeals found, the evidence shows that Keeton was arrested outside of the room. Detective Robert Mack testified that the officers arrested Keeton outside of the hotel room after they ordered him out of the room over a loudspeaker.  (Tr. 547.)  Keeton has not cited any evidence to the contrary.

In regard to the State's alleged warrantless seizure of Keeton's alleged "trial preparation materials"[10] from his prison cell, the Fourth Amendment is inapplicable in a prison cell. *Hudson v. Palmer*, 486 U.S. 517, 525-26 (1984).  Therefore, the State's search and seizure of this evidence from Keeton's cell did not violate his Fourth Amendment right.

Defense counsel was not ineffective for failing to file a motion to suppress because the underlying arrest and seizure were not illegal.

_____

[10]Keeton claims that trial exhibit 21 (referenced on page 693 of the trial transcript) is part of his trial preparation material.  However, the document is a letter from his co-conspirator telling Keeton that they should get their "stories straight" and stating the details of the story that they should use.  This simply does not constitute "trial preparation materials."

38

5.      **Failure to File Motion to Dismiss for Lack of Speedy Trial**

Keeton claims that his counsel failed to file a motion to dismiss based upon a speedy trial violation.  Keeton was arrested on or about August 22, 2002 for the offenses and remained in custody until his trial on March 25, 2003.

In dismissing this claim, the Court of Appeals expressly relied on and applied state procedural law.  The Court found that the record was not properly developed on the alleged speedy trial violation, and held that Keeton needed to file a post-conviction petition and raise the claim to properly develop the record.  Keeton has not indicated that he filed the post-conviction petition.  Keeton has procedurally defaulted this part of his ineffective counsel claim and has not shown cause for such default or resulting prejudice.

6.      **Failure to Request Instruction on Consent**

Keeton asserts that although he testified that any sexual conduct with the victims was consensual, his counsel did not request a jury instruction on consent.  In dismissing this claim, the Court of Appeals held that Keeton was not entitled to an instruction on consent because consent is not an affirmative defense to the charge of rape.[11]  The Court of Appeals relied solely on the state affirmative defense statute and state case law interpreting such statute. Therefore, this Court defers to the Court of Appeals' decision.  *See Allen v. Morris*, 845 F.2d 610 (6th Cir. 1988) (federal courts must defer to a state court's interpretation of its own laws and procedures); *see also Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (principles of

---

[11]Rape as defined under ORC §2907.02(A)(2), requires the state to prove the sexual conduct was compelled by force or the threat of force, an element that, in this court's view, requires the jury to reject a claim that the sexual conduct was consensual.

comity require federal courts to defer to a state's judgment on issues of state law).  As Keeton was not entitled to the instruction on consent, his counsel was not ineffective for failing to request such instruction.

### 7.      Failure to Object to Jurors Being Excused for Cause

Keeton claims that his counsel failed to object when the trial court dismissed two prospective jurors for cause.  During *voir dire*, Juror Deborah Fagan stated that she:  knew one of the victims; had trouble with the victim in the past; and would have difficulty being objective regarding the victim's testimony.  (Tr. 18.)  After the prosecutor read the names of potential witnesses in the case, Juror Christopher Coffman stated that he:  knew Detective Bob Mack because Detective Mack put his father in prison; did not like Detective Mack; and could not be objective or would be influenced by the situation between Detective Mack and his father.  (*Id.* at 21-25.)  Keeton asserts that the trial court did not give defense counsel an opportunity to question the jurors before it dismissed them.  In dismissing this claim, the Court of Appeals found that defense counsel's failure to object was trial strategy and Keeton was not prejudiced by such failure to object.

The jurors indicated that they would have trouble being fair and objective because of past encounters with the victim and a State's witness.  Keeton was entitled to a fair and impartial jury, not one biased in his favor.  Keeton has not shown that his counsel's failure to object was something other than a matter of trial strategy or that an objection would have changed the Court's dismissal of the jurors for cause.

40

8.      **Cross-Examination Enhanced State's Version of the Facts**

Keeton asserts that his counsel did not attempt to challenge or impeach some of the State's witnesses on cross-examination, but instead enhanced their credibility by merely having them repeat direct testimony. Keeton claims defense counsel merely repeated the direct examination of Det. Mayer. (Tr. 816-24.) The record reveals defense counsel asked Det. Mayer about the clothes found near the road and Det. Mayer's calculations on driving time and distance. In dismissing this part of the claim, the Court of Appeals found that defense counsel's questions did not prejudice Keeton.[12] This Court concurs with the Court of Appeals ruling on this matter.

Keeton also asserts his counsel failed to object to inadmissable hearsay. JoAnne Smalley, a sexual assault nurse examiner who examined one of the victims, testified to what the victim told her about the assault during the examination. In dismissing this part of the claim, the Court of Appeals found that this evidence did not constitute hearsay under a state evidence rule and held that the trial court properly admitted it.

Alleged trial court errors in the application of state procedure or evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally

---

[12] Keeton also asserts that his counsel enhanced Anna Adkins' credibility by asking her to repeat the narrative she previously gave on direct examination regarding how the events occurred. In dismissing this claim, the Court of Appeals expressly relied on and applied App. R. 16(A)(3), a state procedural rule, because Keeton failed to cite correctly to Adkins' testimony. Therefore, Keeton has procedurally defaulted this part of the claim, and has not shown cause or prejudice. Accordingly, this part of the claim should be dismissed.

41

unfair as to violate the petitioner's due process rights."  *See Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001); *see also Schoenberger v. Russell*, 290 F.3d 831, 836 (6th Cir. 2002).

In the instant action, the trial court's admission of the evidence was not fundamentally unfair as to violate Keeton's due process rights.  Under the state's evidentiary rules, statements made for the purpose of medical diagnosis or treatment are admissible.  Therefore, counsel was not ineffective for failing to object to the admission of such evidence.

### 9 and 10.  Failure to Object to Witnesses' Opinion Testimony

Keeton asserts that his counsel failed to object to the testimony of Deborah Nashburn and JoAnne Smalley, the nurses who examined the victims.  Keeton claims that the nurses vouched for the victims' credibility when they testified that their medical findings were consistent with the victim's stories of sexual assault given during the examinations.  Further, Keeton claims that counsel failed to object to Det. Mayer's opinion as to the truth and veracity of the victims' statement.  Det. Mayer testified that the victims' testimony was consistent with their prior statements to him.   Keeton also claims that counsel should have objected to Det. Mayer's testimony that one of the victims told him that Keeton was the primary aggressor and actually assaulted them, raped them, and forced them to take their clothes off.

In dismissing this claim, the Court of Appeals found that: Nashburn did not testify that the victim was credible or truthful, but merely stated that the victim's statement to her was consistent with her medical findings; and Det. Mayer did not vouch for the victim's truth or veracity, but merely indicated her testimony and prior statements were consistent.[13]  The Court

---

[13] The Court of Appeals did not address specifically Keeton's claim regarding Smalley's testimony.  However, the analysis of Nashburn's testimony is also applicable to

42

of Appeals also found that Keeton was not prejudiced by the admission of the evidence.

As this Court previously discussed, a state evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights.  Keeton's right to due process was not violated.  Nashburn, Smalley, and Det. Mayer did not testify to the credibility or truth of the victim.   Moreover, given the overwhelming evidence of the consistency of the victims' testimony, as well as Keeton's guilt, Keeton can not demonstrate that he was prejudiced by counsel's alleged errors.  Therefore, defense counsel was not ineffective for failing to object to the nurses' or Det. Mayer's testimony.

### 11.    Failure to Request Lesser Instruction

Keeton asserts that his counsel failed to request a lesser instruction on assault and gross sexual imposition.  Keeton was convicted of felonious assault and rape.  Keeton claims that a felonious assault conviction requires serious physical harm, whereas a lesser offense of assault requires only physical harm.  Keeton claims that there was disputed evidence at trial of whether the victim suffered serious physical harm, *i.e.*, a broken nose, or merely physical harm, *i.e.*, a deviated septum.  In regard to the rape charge, Keeton claims that an instruction on gross sexual imposition was warranted because the State's evidence showed Keeton touched the victim's breasts.

The State Court of Appeals rejected this argument based on state law.  With regard to the charge of felonious assault, the only evidence in the record was that Keeton's beatings to

Smalley's testimony because both were asked essentially the same question.

the face of the victims resulted in multiple injuries – including a fractured nose, as well as multiple bruises, bloodied faces, and chipped teeth. Thus, if Keeton were acquitted of this charge, the evidence would not have supported a conviction for a lesser included offense. With regard to the rape charge, the evidence in the record demonstrates that Keeton forced the victims to have sex with each other, penetrated the victims vaginally with his fingers, and forced one of the victims to perform oral sex on him and his co-defendants. His defense was that the oral sex was consensual with one victim and it occurred earlier in the evening. He denied other sexual conduct.

Moreover, counsel's failure to request the instructions could have been part of a deliberate trial strategy. It is reasonable trial strategy not to request a lesser-included offense instruction where counsel attempts to persuade the jury that greater offenses were not committed and seeks a straight acquittal on those charges. *See Tinsley v. Million*, 399 F3d 796 (6th Cir. 2005) (it was a permissible exercise of trial strategy not to request a manslaughter instruction in a murder trial where the primarily line of defense is that the defendant was not the shooter). To have argued that the petitioner was only guilty of assault and sexual imposition would have compromised the strategy to have Keeton absolved of any guilt whatsoever. A defendant's disagreement with trial tactics and/or strategy does not support a claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Thus, Keeton fails to set forth a claim of ineffective assistance in this instance.

### 12.    Failure to Object to Experimental Evidence

Keeton asserts that his counsel did not object to Detective Mayer's testimony regarding the time and distance estimations he calculated. Det. Mayer testified as to the time and

44

distance it took him during the day to drive from the house where one of the victims called 911 ("the 911 house") to Bell Street, and then to the location where an officer stopped Flannery and Myers. In dismissing this claim, the Court of Appeals found that the trial court did not abuse its discretion in admitting the evidence and, therefore, Keeton's counsel was not ineffective for failing to object to its admission. The Court of Appeals reasoned that the experiment was relevant; conducted under substantially similar conditions, did not consume undue time, or confuse the issues or mislead the jury.

Experimental evidence is admissible so long as the evidence is reliable and probative, and experimental evidence is deemed to have probative value if the conditions of the experiment were identical with or similar to the conditions of the transaction in litigation. *Crown Cork & Seal Co. v. Morton Pharmaceuticals, Inc.*, 417 F.2d 921, 926 (6th Cir. 1969); *see also Walker v. Jax Mold & Mach.*, 1995 U.S. App. LEXIS 37024, *5-6 (6th Cir. Dec. 6, 1995) (unpublished).

In the instant action, Det. Mayer's experiment was relevant. He wanted to establish that a person could travel from the 911 house to the Bell Street address, and then to the location of the traffic stop within a thirty to forty minute period, the approximate time period between the victim's 911 call and the traffic stop. Further, the experiment was reliable and probative of whether the defendants had time between freeing the second victim and being arrested by the police to move the victims' car on Bell Street. Although the exact route that Keeton may have traveled was unknown, the experiment showed that it was possible for a person to travel to the locations in issue within a thirty to forty minute period. The experiment's conditions, if anything, were more favorable to Keeton than the actual conditions. Det. Mayer testified that

45

he traveled in the daytime and went the speed limit.  Keeton was traveling around 4:00 a.m., a time when there is likely less traffic than in the daytime and when it may be more likely to exceed the speed limit.  Therefore, Keeton's counsel was not ineffective for failing to object to Det. Mayer's testimony regarding his time and distance calculations.

### 13.    Failure to Examine Evidence or Conduct an Investigation

Keeton claims that his counsel failed to view videos shown at the trial, and thereafter, asked the witnesses' opinion as to what was shown on the videos.  Further, Keeton claims that the prosecution failed to provide the defense with a statement and that defense counsel did nothing further "to pursue that issue."   Keeton provides this Court with no further elaboration on the facts surrounding these alleged failures.

In dismissing the part of the claim regarding the videos, the Court of Appeals found that:  (1) Keeton's references to the transcript did not support his argument; and, (2) he was not prejudiced by counsel's failure to object to the victim's testimony.   In dismissing that ground that counsel failed to pursue the statement, the Court of Appeals found that defense counsel had an opportunity to review the statement.   The trial court provided defense counsel the opportunity to look over the statement on a lunch break.  (Tr. 810.)

In regard to both the failure to view the video and the failure to obtain the statement, Keeton fails to make any claim that he was prejudiced by either of counsel's alleged omissions.  As such, Keeton's ineffective assistance claim on these matters lack merit.

### 14.    Failure to Make Statement at Sentencing

Keeton asserts that his counsel failed to make a statement on his behalf at the

46

sentencing hearing.  At sentencing, when the trial court asked counsel if he had anything to say on Keeton's behalf, counsel stated that he did not.  (Tr. 1045.)  In dismissing this claim, the Court of Appeals held that Keeton did not establish he was prejudiced by counsel's failure to make a statement, especially since Keeton only received a forty-year prison term as opposed to a possible eighty-six year term.

Keeton has not shown that he was prejudiced by defense counsel's failure to make a statement on his behalf.  The trial court did not impose the maximum sentence.  Given the evidence presented at trial, this Court cannot conclude that a statement given by counsel would have resulted in a sentence less than what was imposed.   Moreover, this claim will be moot if the case is remanded for resentencing.

### 15 and 16.    Failure to Object to Irrelevant and Inflammatory Evidence

#### a.    Evidence of Arrest

Keeton claims that his counsel failed to object to irrelevant and prejudicial testimony regarding his arrest outside of a motel.  Keeton points to Det. Mack's testimony that: the anonymous caller informed the police that they should enter with caution because Keeton was a flight risk; officers were stationed around the room of the motel; police ordered nearby rooms evacuated; and Keeton was put in a felony position on his knees when he was arrested.  Keeton also sets forth Christopher Chinn's testimony that he rented the room for Keeton, using fake identification.  Keeton claims that this testimony implied that he was dangerous.  In dismissing this claim, the Court of Appeals found that in considering all evidence the State presented during the trial, the evidence regarding Keeton's arrest was only marginally indicative of Keeton's dangerousness and Keeton was not prejudiced by defense counsel's failure to object

47

to the evidence.

Regardless of the arrest evidence, the State's evidence showed that Keeton was dangerous.  Keeton admitted to losing his temper and striking the victims multiple times. Further, the victims testified as to the sexual assault.  Keeton was not prejudiced by his counsel's failure to object to evidence regarding his arrest.

### b.        Other Irrelevant and Inflammatory Evidence

Keeton also asserts that trial counsel failed to object to testimony given by one of the victim's primary physician Dr. Marion Demers, Nurse Nashburn, C.O. Thiesen, and Det. Mack. In response to the prosecution's inquiry about Dr. Demers report stating that the two men beat and raped the victim and her friend, Dr. Demers testified as to what the victim told her, *i.e.*, three men played a role, but one was doing "more of the driving," and "there was a boss and a cohort abusing [her] in the back [of the vehicle]."   (Tr. 722-23.)  Nurse Nashburn testified as to statements the victim made to her during her examination. (Tr. 404-08.)  C.O. Thiesen testified that:  Keeton was a cohort with another one of the people involved in the incident and prisoners are separated so they cannot collaborate stories.  (Tr. 681-82.)  Det. Mack testified that the room in which Keeton stayed was registered to Christopher Chinn.  (Tr. 549.)  In dismissing this claim, the Court of Appeals found that Keeton was not prejudiced by the testimony.

This evidence did not violate Keeton's due process rights.  In regard to Dr. Demers' testimony, the victim's statements were made for the purpose of medical diagnosis or treatment.  Moreover, given the other evidence in the case, particularly the victim's in-court testimony, Keeton has not shown that he was prejudiced by this testimony.  Nurse Nashburn gave similar testimony and the Court of Appeals held it was admissible under the hearsay

exception.  The Magistrate Judge agrees with the reasoning of the Court of Appeals.

Keeton has not attempted to show that the testimony of C.O. Thiesen and Det. Mack prejudiced him in any way.   Moreover, this Court previously addressed and rejected the claim regarding Det. Mack's testimony.  *See*, IV.F.15 and 16.a *supra*.

### 17.      Failure to Object to Amendment of the Indictment

Keeton claims that his counsel improperly agreed to the prosecutor's request to amend the indictment because the amendment made the State's case easier to prove.  After reviewing the record, the Court of Appeals held that the jury instructions, not the indictment, were amended for clarification.  The prosecutor requested the court to modify the jury instructions.  On the kidnapping charge reflected in count one, the prosecutor requested that the court give the aiding and abetting instruction; and on aiding and abetting felonious assault, the prosecutor requested that only the felonious assault instruction be given.

The prosecutor specifically stated that the indictment would not have to be modified because under the state aiding and abetting statute, aiding and abetting could be considered when a defendant is either charged with aiding and abetting or the principal offense.  (Tr. 972-74.)  The Court of Appeals found the instruction was changed merely for clarification.  This Court finds that Keeton's counsel was not deficient due to his failure to object to the amendment.

In conclusion, the Court of Appeals' decision denying Keeton's seventeen sub-claims of ineffective trial counsel is neither contrary to, nor an unreasonable application of clearly established federal law.  Accordingly, this claim should be dismissed.

49

### G.    Ground Ten: Unconstitutional Multiple Punishments

In his tenth ground for relief, Keeton claims that he was subjected to unconstitutional multiple punishments when the trial court sentenced him separately for the offenses of rape and kidnapping. Keeton asserts that the kidnapping and rape counts constituted allied offenses of similar import, but the trial court failed to merge these offenses. The trial court sentenced Keeton to consecutive terms on these counts.

In dismissing this claim, the Court of Appeals found that Keeton's Fifth Amendment rights were not violated because the offenses of rape and kidnapping do not constitute two or more allied offenses of similar import. The Court of Appeals compared the rape and kidnapping statutes and found that either crime could be committed without committing the other because each offense contains at least one element not contained in the other.[14]

The Double Jeopardy Clause prohibits, among other things, multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The court begins the analysis by determining whether the legislature intended to punish cumulatively the same conduct which violates two statutes. *Banner v. Davis*, 886 F.2d 777, 779-80 (6th Cir. 1989). In determining

---

[14] O.R.C. § 2907.02(A)(2) states:

No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

O.R.C. § 2905.01 states in relevant part:

No person, by force, threat, or deception shall remove another from the place where the other person is found or restrain the liberty of the other person, [with the purpose to]: facilitate the commission of any felony or flight thereafter; terrorize, or to inflict serious physical harm on the victim or another; or engage in sexual activity with the victim against the victim's will

50

what the state legislature intended, federal courts typically defer to the state courts' interpretation of legislative intent.  *Id.* at 780.  Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination.  *Id.* at 780-82.  However, if the state court did not make that determination and the legislative intent is unclear, the court applies the test set forth in *Blockburger v. U.S.*, 284 U.S. 299 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

In the instant action, this Court is bound by the state court construction of its own statutes.  O.R.C. § 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Under Ohio law, offenses are considered "allied and of a similar import" when they "correspond to such a degree that commission of the one offense will result in the commission of the other."  *Woodfork v. Russell*, 1994 U.S. App. LEXIS 3474, *7 (6th Cir. Feb. 24, 1994)(unpublished); *see also State v. Rice*, 69 Ohio St.2d 422, 424 (1982).  Thus, a defendant can be sentenced separately for each offense of which he is convicted, in the view of the Ohio

51

Supreme Court, if the elements of the crimes are not exactly the same and one offense for which a separate sentence is imposed does not amount to a lesser included offense of another. *Woodfork*, 1994 U.S. App. LEXIS 3474 at *7-8.

In *State v. Logan*, 60 Ohio St.2d 126 (1979), the Ohio Supreme Court held that rape and kidnapping were not allied offenses of a similar import where the defendant possessed a different animus to each offense.

In the *Logan* case, the defendant was accused of rape and kidnapping after he abducted a woman, forcing her into an alley and down a flight of steps, and then raped her. The court reasoned that although a defendant could not be convicted of both rape and kidnapping when he commits a "standstill" rape, a more prolonged abduction prior to the commission of the rape would establish two separate offenses. *Id.* 60 Ohio St.2d at 131-32, 397 N.E.2d at 1349-50. The court concluded that the period of time in which the victim was forced into the alley and down a flight of steps was sufficiently prolonged to warrant conviction on both charges. In other words, said the court, the defendant's actions in kidnapping the victim were not "merely incidental" to the rape. *Id.* 60 Ohio St.2d at 135, 397 N.E.2d at 1351-52.

In *Logan*, the Supreme Court of Ohio held that the determination whether the kidnapping offense constitutes a separate criminal act committed with a "separate animus," turns on (1) whether "the restraint or movement of the victim is merely incidental to [the] separate underlying crime, or instead has a significance independent of the other offense"; and (2) if merely incidental, whether "the victim, by such limited asportation or restraint, was subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime."  *Id.* at 1351-52.

52

In the instant case, evidence exists of separate animus to support independent convictions and sentencing on both kidnapping and rape.   It is clear that the victims were restrained for an extended period of time not only to be raped, but to be terrorized.  While in the vehicle, despite pleading to be taken home, the victims were verbally threatened and abused, physically beaten, and humiliated.  Moreover, when one of the victims tried to escape when the vehicle stopped at a stop sign *after* the rape had occurred, Keeton ordered the driver of the vehicle to "go," preventing her escape.   This victim was not raped again after her attempted escape, demonstrating a separate animus for the kidnapping and rape in that instance. In addition, the victim who remained in the vehicle, although raped again by Keeton and his co-defendants, was also held for a period of time following the rapes before she was released.

Accordingly, based on the particular facts of this case, Keeton could be separately convicted and sentenced for both rape and kidnapping under Ohio's multiple count statue, O.R.C. § 2941.24, without violating the Double Jeopardy Clause. Thus, the Court of Appeals' decision is neither contrary to, nor an unreasonable application of clearly established federal law.

## V.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Keeton's petition (Doc. No. 1) be GRANTED IN PART, solely with respect to Ground Two and the petition be DENIED IN PART on the remaining grounds.   The Magistrate recommends that the case be remanded for resentencing consistent with *Blakey* and *Foster*.


s/ *Nancy A. Vecchiarelli*
NANCY A. VECCHIARELLI
U.S. MAGISTRATE JUDGE


Date:  July 20, 2006



## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

54